IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA )
)
v. ) Criminal No. 09-82-3
)
FRANK MURPHY )

O P I N I O N

DIAMOND, D.J.

Presently before the court is a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. §2255 filed by Frank Murphy ("petitioner"). For the following reasons, petitioner's motion will be denied.[1]

On March 3, 2009, a grand jury returned a two-count indictment charging petitioner, along with Stephan Andre Pete and William James Peterson, at Count One with conspiracy to distribute and to possess with intent to distribute 500 grams or more of cocaine. Count Two of the Indictment charged Pete only with possession of a firearm in furtherance of a drug trafficking crime. Petitioner and Pete proceeded to trial.[2] On May 5, 2010, a jury found petitioner guilty at Count One and Pete guilty at both counts.

---

[1] Pursuant to Rule 8(a) of the Rules Governing §2255 Proceedings, the court finds that no evidentiary hearing on petitioner's motion is required. Where the record affirmatively indicates that a movant's claim for relief is without merit, the claim may be decided on the record without a hearing. See Government of Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985); Page v. United States, 462 F.2d 932, 933 (3d Cir. 1972). Thus, if the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted in support of a §2255 motion, or if the movant would not be entitled to relief as a matter of law even if the factual predicates as alleged in the motion are true, it is not an abuse of discretion to elect not to conduct an evidentiary hearing. See Nicholas, 759 F.2d at 1075. In this case, for the reasons set forth in this opinion, the record affirmatively establishes as a matter of law that petitioner's claims for relief are without merit.

[2] Peterson entered a plea of guilty to Count One prior to trial.

Petitioner filed a post-trial motion for new trial pursuant to Fed. R. Crim. P. 33 alleging that the jury's verdict resulted from the prejudicial testimony of Sergeant Shawn Spence of the Henderson (North Carolina) Police Department, who improperly had testified on cross-examination that petitioner "had been convicted of drug charges." This court denied petitioner's motion, finding that the admission of the testimony was not error because it was responsive to a question asked by petitioner's counsel, Stephen H. Begler, Esq.. In light of that, as well as "the otherwise overwhelming evidence of [petitioner's] guilt," this court concluded that the interest of justice did not require a new trial.

Petitioner was sentenced to a term of imprisonment of 72 months, a downward variance from the advisory guideline sentencing range of 110-137 months applicable under the United States Sentencing Guidelines. Petitioner filed a direct appeal to the United States Court of Appeals for the Third Circuit, which subsequently affirmed petitioner's judgment of conviction and sentence.

Petitioner timely filed the pending §2255 motion asserting two grounds for relief: (1) that his trial counsel was ineffective in failing to object to the racial composition of the jury panel before voir dire began; and, (2) that his trial counsel was ineffective in asking an open-ended question during cross-examination of a government witness which resulted in the admission of testimony indicating that petitioner had a prior drug conviction. Upon due consideration of petitioner's motion, the government's response, and petitioner's reply, as well as the record as a whole, the court finds that petitioner is not entitled to relief under §2255.

A federal prisoner may move the sentencing court to vacate, set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §2255(a). In general, §2255 is a vehicle to cure only jurisdictional errors, constitutional violations, proceedings that resulted in a "complete miscarriage of justice" or events that were "inconsistent with the rudimentary demands of fair procedure." United States v. Timmreck, 441 U.S. 780, 783 (1979).

In order to prevail on a claim that counsel rendered constitutionally ineffective assistance, a petitioner must demonstrate: (1) that counsel's performance fell below an objective standard of reasonableness; and, (2) that the deficient performance actually prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). A petitioner must establish both prongs of the inquiry, for "[f]ailure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." Id. at 700.

The first prong requires the petitioner to demonstrate that counsel's performance was deficient. The court begins with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and scrutiny of counsel's performance is to be highly deferential. Id. at 689. The petitioner has the burden of overcoming the strong presumption that counsel was effective. Id. The assessment of counsel's performance must be made without using the benefit of hindsight to second-guess tactical decisions made by an attorney unless they are unreasonable. Id. at 690.

%AO 72
(Rev. 8/82)

- 3 -

If deficient performance is established, the second prong of the Strickland analysis requires a showing that counsel's deficient performance prejudiced the defense. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. To satisfy this test, a petitioner must demonstrate that but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. Id. at 694.

"[T]here is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies ... [i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id. at 696-697. Here, petitioner raises two claims of ineffective assistance of counsel against Attorney Begler. Because petitioner cannot show prejudice on either claim even were the court to accept his allegations of deficient performance,[3] both claims fail as a matter of law and he is not entitled to relief under §2255.

Petitioner's first allegation of ineffectiveness alleges that Attorney Begler was deficient in failing to challenge the racial composition of the panel from which petitioner's jury was selected prior to the beginning of voir dire when it first became apparent that the

---

[3] The court is not making a specific finding that Attorney Begler's performance was deficient in any respect, but merely accepting petitioner's allegations for purposes of evaluating prejudice under the Strickland analysis.

venire did not contain any African-Americans.[4] However, petitioner has failed to establish prejudice on this claim because, even had Attorney Begler lodged an objection prior to the commencement of voir dire, petitioner cannot show that the absence of African-Americans on the jury panel violated his right to an impartial jury.

The Sixth Amendment secures to criminal defendants the right to be tried by an impartial jury drawn from sources reflecting a fair cross section of the community. Berghuis v. Smith, 559 U.S. 314 (2010); Taylor v. Louisiana, 419 U.S. 522, 527 (1975). In Duren v. Missouri, 439 U.S. 357, 364 (1979), the Supreme Court set forth the criteria necessary to establish a *prima facie* violation of the fair cross-section requirement: (1) the group allegedly excluded is a distinctive group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such people in the community; and (3) this underrepresentation is due to systematic exclusion of the group in the jury selection process. "Systematic exclusion" has been defined to mean exclusion inherent in the particular jury selection process utilized. Id. at 366.

Here, petitioner has not, and cannot, establish a *prima facie* violation of the fair cross-section requirement. First, as to the second prong of the Duren test, petitioner has provided no statistical data, as required, to "demonstrate the percentage of the community made up of the group alleged to be underrepresented." United States v.

---

[4] The record shows that Attorney Begler did object to the composition of the panel but not until jury selection already was under way. (Doc. No. 175, Trail Transcript 5/3/10, at 37). On direct appeal, the Third Circuit Court of Appeals held that because the composition of the jury panel was clear as it was being assembled, Attorney Begler's failure to object before voir dire examination began constituted a waiver of any objection to the venire's composition. United States v. Murphy, 464 Fed.Appx. 60, 62 (3d Cir. 2012).

Weaver, 267 F.3d 231, 240 (3d Cir. 2001). On direct review the Third Circuit Court of Appeals found that, even had an objection to the venire's composition not been waived, petitioner's lack of evidence on the second prong of Duren was fatal to his claim of a fair-cross section violation, Murphy, 464 Fed. Appx. at 62-3, and petitioner likewise has not presented to this court any statistical data or any other evidence to show that the representation of African-Americans in venires from which juries are selected in this district is not fair and reasonable in relation to the number of such people in the community.

Nor has petitioner presented any evidence to demonstrate that any underrepresentation that may exist is due to systematic exclusion of African-Americans in the jury selection process. The jury venire in this case was chosen in accordance with the Plan of the United States District Court for the Western District of Pennsylvania for the Random Selection of Grand and Petit Jurors, which was approved by then Chief Judge Scirica of the Third Circuit Court of Appeals in April of 2009. Murphy, 464 Fed.Appx. at 61, n. 2. Petitioner makes no assertion that this plan systematically excludes African-Americans, nor is there any other evidence of systematic exclusion of African-Americans in venires from which juries are selected in this district.

As petitioner had no viable constitutional challenge to the racial composition of the jury panel, he cannot show prejudice from Attorney Begler's failure to lodge a timely objection. Accordingly, even if this court were to assume that Attorney Begler's performance was deficient in this regard, petitioner's first ineffectiveness claim fails as a matter of law.

Petitioner's second ineffective assistance claim alleges that Attorney Begler was deficient in cross-examining a government witness

by asking an open-ended question that resulted in the witness testifying that petitioner "had been convicted of drug charges." However, petitioner has failed to establish prejudice on this claim because he cannot show that counsel's alleged error deprived him "of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.

The asserted prejudicial statement was uttered by government witness Sergeant Shawn Spence upon cross-examination by Attorney Begler. On direct examination, Spence had testified regarding a prior traffic stop in North Carolina of a van occupied by petitioner, co-defendant Stephan Pete and Adonay Martinez, a juvenile who also testified at petitioner's trial on behalf of the government.[5] On cross-examination, Attorney Begler noted that Spence had indicated during his direct testimony that he had stopped the van because he thought the three were selling drugs, but previously had written in a report that he believed they may have been involved in robberies. Mr. Begler then specifically asked Spence: "So what was it?" In response, Spence indicated he "wasn't certain what they were doing" then proceeded to discuss a number of reasons why, based upon his training and experience, he believed the three were transporting narcotics. Among those reasons, Spence remarked that he had learned that petitioner "had been convicted of drug charges." (Doc. No. 176, Trail Transcript 5/4/10, at 204). Petitioner alleges that this statement unfairly prejudiced the jury because "the only evidence" against him was the testimony of Martinez, who received immunity from prosecution based on his cooperation. Petitioner's position is belied by the record.

---

[5] This evidence was admitted pursuant to Fed. R. Evid. 404(b) for the limited purpose of establishing a pattern of conduct, and the jury received a limiting instruction regarding this similar conduct evidence.

"[A] court hearing an ineffectiveness claim must consider the totality of the evidence before the ... jury ... Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." Strickland, 466 U.S. at 695-696.

Here, there is no reasonable probability that the outcome of the trial would have been different had the jury not heard the isolated statement regarding petitioner's past conviction on drug charges because, as this court previously noted in denying petitioner's motion for new trial, the evidence of petitioner's guilt in this case was overwhelming.

A review of the trial transcript in this case reflects the convincing nature of the evidence against petitioner presented by the government through the testimony of six witnesses: Pennsylvania State Police Troopers Ty Bintrim and Timothy Motte; William Earley, who acted as a confidential informant; Adonay Martinez, a participant in the offense who testified on behalf of the government; Sergeant Spence of the Henderson (North Carolina) Police Department; and, DEA Task Force Officer Michael C. Warfield. Essentially, that evidence established the following.

In January of 2009, Earley notified authorities that he had participated in several telephone conversations with petitioner's co-defendant, William Peterson, in which Peterson indicated that soon he would be flying to Pittsburgh from Arizona and that he could supply Earley with five kilograms of cocaine.

On February 1, 2009, investigators learned from Earley that Peterson intended to fly to Pittsburgh the following day and would provide him with 1 kilogram of cocaine for $35,000. Peterson arrived in Pittsburgh on February 2, 2009, and told Earley he would call the next morning. Earley met with investigators on February 3, 2009, and a plan was formulated whereby Earley would pick up Peterson at a Best Western Hotel in Greentree and take him to a Knights Inn in Bridgeville. Peterson then was to take Earley's vehicle to another hotel in North Fayette Township to pick up the cocaine and deliver it to Earley at the Knights Inn, where a traffic stop would be conducted.

The plan was executed and a traffic stop of Earley's vehicle was conducted in the parking lot of the Knight's Inn. Although Peterson had been alone when he left in Earley's car, there were 3 passengers in the vehicle upon his return: Pete (front seat passenger); petitioner (right rear passenger); and, Martinez (left side passenger). The occupants were asked if there were any weapons in the vehicle and Pete advised that there was a handgun, later discovered to be a .45 caliber Glock, in the luggage located on the backseat. The vehicle was taken to the Pennsylvania State Police barracks and a K-9 unit alerted to the presence of controlled substances in the trunk area. A search warrant was obtained and one kilogram of cocaine was found in the trunk inside Martinez's luggage.

During the trial, the jury heard testimony from Martinez regarding the February 2009 drug transaction as well as two other interstate drug transactions in which Martinez had participated with petitioner and Pete. Specifically, Martinez testified as to a trip in December of 2008, in which he, petitioner and Pete transported one kilogram of crack cocaine from Arizona to New York City.[6] He also testified as to another trip in January of 2009 in which he and Pete had traveled by plane to Little Rock, Arkansas, where they met up with petitioner and another individual who had arrived in Little Rock by bus. The four then rented a PT cruiser and drove to Memphis with one kilogram of powder cocaine.

As the record demonstrates, although Martinez was a key witness for the government, his testimony certainly was not, as petitioner asserts, the "only" evidence that the government presented against him. To the contrary, the testimony of Earley and Troopers Bintrim and Motte alone provided strong evidence that petitioner was not merely an unaware passenger in the vehicle but an active participant in the February 2009 drug transaction. Martinez's testimony regarding that transaction, consistent with the testimony of the others as to the plan for the controlled purchase, as well as his testimony regarding the prior similar transactions, served to complete the picture.

Moreover, the jury obviously found Martinez to be a credible witness despite the fact that they were aware that he was testifying under a grant of immunity and despite vigorous and extensive cross-examination by both Attorney Begler and Attorney Sally Frick on behalf of Pete, and petitioner does not explain how Martinez's credibility in

---

[6] It was upon the return drive to Arizona from that trip to New York City that the vehicle driven by petitioner was stopped in Henderson, North Carolina, by Sergeant Spence.

any way was impacted by the improper testimony regarding petitioner's prior drug conviction.

In light of the otherwise overwhelming evidence against petitioner, it is highly unlikely that Sergeant Spence's isolated remark regarding petitioner's prior conviction on drug charges had any influence at all on the jury's verdict. Reference to defendant's prior conviction was made on just that one occasion, and neither the government nor defense counsel for either defendant mentioned it again during the trial or in their closing arguments. In addition, Attorney Begler made a sound, reasoned strategic decision not to emphasize petitioner's prior conviction by declining to have the court provide a cautionary instruction regarding it. That the jury in all likelihood would have arrived at the same determination of petitioner's guilt even without any knowledge of his past conviction further is evidenced by the fact that, based on the same evidence, the jury found petitioner's co-defendant Pete guilty of the drug conspiracy charge of the indictment despite the absence of any evidence that Pete had any prior convictions.

As petitioner is unable to establish a reasonable probability that the outcome of the trial would have been different, he cannot show prejudice from Attorney Begler's cross-examination opening the door to the admission of testimony regarding petitioner's prior conviction on drug charges. Accordingly, even if this court were to assume that Attorney Begler's performance was deficient in this regard, petitioner's second ineffectiveness claim fails as a matter of law.

Because petitioner has failed to establish any prejudice arising from the alleged deficient performance of his trial counsel, he is not entitled to relief on either of the grounds of ineffective assistance of counsel raised in his §2255 motion. Thus, his motion will be denied.

Local Appellate Rule 22.2 of the United States Court of Appeals for the Third Circuit directs that when a final order denying a motion under §2255 is entered a determination of whether a certificate of appealability should issue also shall be made. The issuance of a certificate of appealability is "[t]he primary means of separating meritorious from frivolous appeals." <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983) (setting forth standards for certificate of probable cause).

Congress has mandated that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of a denial of the constitutional right." 28 U.S.C. §2253(c)(2). As this court's foregoing discussion makes clear, petitioner has failed to make a substantial showing of a denial of a constitutional right. Accordingly, this court determines that a certificate of appealability should not issue in this case. <u>See</u> <u>Santana v. United States</u>, 98 F.3d 752, 757 (3d Cir. 1996).

For the reasons set forth above, petitioner's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. §2255 fails to raise any meritorious claim and must be denied as a matter of law.

An appropriate order will follow.

/s/ Gustave Diamond
Gustave Diamond
United States District Judge

Date: May 30, 2013

cc: Margaret E. Picking
    Assistant United States Attorney

    Frank Murphy